UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| **DESELLE VOLSON** | **CASE NO. 1:18-CV-01633** |
| **VERSUS** | **JUDGE DRELL** |
| **U S DEPT VETERAN AFFAIRS** | **MAGISTRATE JUDGE PEREZ-MONTES** |

R U L I N G

Before the court is a motion for summary judgment filed by defendant, Robert Wilkie, Secretary of Veterans Affairs, ("VA"). (Doc. 17). The VA's motion seeks dismissal of all claims against it by Deselle Volson ("Volson" or "Plaintiff"), in this suit, based on Plaintiff's alleged failure to demonstrate a *prima facia* case of discrimination. For the reasons expressed below, the court finds the motion should be GRANTED, dismissing all pending claims with prejudice.

I. BACKGROUND

*Relevant Facts*

Plaintiff is a former employee at the VA Medical Center ("VAMC") in Alexandria, Louisiana. Plaintiff was hired as a Medical Support Assistant and assigned to the call center, where she was tasked with fielding patient calls and assisting with appointment scheduling. (Doc. 1 at ¶ 4). As a new hire, Plaintiff was subject to a one-year probationary period beginning from her May 31, 2016 hire date according to 5 C.F.R. § 801. (Doc. 17-2 at Ex. 1; Doc. 28).

Prior to her employment with VAMC, Volson attained a 90% disability rating with the U.S. Department of Veterans' Affairs based on a variety of medical diagnoses, including anxiety, anemia, bipolar disorder, sleep apnea, post-traumatic stress disorder, memory loss, and diabetes. (Doc. 17-2 at pp. 21-24). During her employment, VA provided Volson several requested accommodations, including increased break time and comfort measures, documented by her

1

supervisor Sandra Noel ("Noel"). (Doc. 17-2 at p. 4). Plaintiff's suit alleges that shortly after her employment she began to experience unprofessional and abusive treatment by coworkers which she asserts was based on her disabilities. (Doc. 1-1 at ¶ 5).

Plaintiff's 90-day assessment was conducted on August 31, 2016. (Doc. 17-2 at pp. 5-10). On February 22, 2016, Noel sent out an email instructing all call center personnel in proper handling of Lake Charles calls and, specifically, the need to schedule appointments for Lake Charles veterans, rather than simply transferring their call to another facility. (Id. at pp. 11-12). On February 28, 2017, Volson emailed a request to change her work schedule or "tour" as it's known at the VA. (Doc. 17-2 at p. 13).

On March 3, 2017, following a complaint from a veteran who was frustrated because of being transferred several times, a conversation occurred among the call center employees regarding the proper handling of Lake Charles calls. (Id. at pp. 18-21). Immediately after this impromptu employee meeting, Volson sent an email to Noel asking that Noel

> "[p]lease tell Ms. Annie Joseph that Pat Hall is not the Supervisor of the Call Center. I do not deal with nasty attitude people. If Ms. Joseph has something to say to the Call Center then she need to e-mail us or tell Ms. Burkes, so she can let us know." (Doc. 17-2 at p. 23).

On March 7, 2017 Noel again sent out her February 22, 2017 email with an additional reminder about the importance of proper scheduling for Lake Charles veterans. This email appears to be prompted by a complaint by a veteran received on the same date. (Id. at p. 11). While the email was sent at 11:52 a.m., Noel received a complaint from the Associate Director of Activations reporting that Volson violated the express instructions of the email by failing to schedule an appointment and, instead, simply transferring the call. (Id. at p. 32). Noel received an additional complaint from an employee at a Natchitoches facility indicating that Volson transferred a call from a veteran without asking for a name or attempting to schedule an

2

appointment. (Id. at p. 32). Also on the same date, Plaintiff visited VAMC's EEO officer to gather information about how to file an EEO complaint. (Id. at p. 38).

Noel issued Volson a written counseling on March 9, 2017. (Doc. 17-2 at p. 32). Noel then sent Volson calendar invitations to meet with her in person on both March 9, 2017 and March 10, 2017; neither of which Volson accepted. (Id. at pp. 40-41). Volson eventually received a copy of her written counseling in person, in the presence of her union representative on or about March 15, 2017. During the course of this meeting, Volson confessed that she did not read Noel's emails of February 22nd or March 7th. As a result, Volson was afforded an opportunity to retrain with an experienced call center employee. (Id. at p. 35). Volson became loud during the retraining, shouting to her coworkers, "Ms. Noel said we schedule for EVERBODY /sic/ y'all better be scheduling them." (Id.).

Plaintiff's employment was terminated effective March 17, 2017. (Doc. 1-1 at ¶ 12). In what VAMC employee Ben Johnson admits was an error caused by his inexperience and poor attention to detail, a form letter terminating Volson for excessive absences was sent to her on the date of her termination. (Doc. 23-1). VAMC rescinded this letter and issued Volson a corrected letter, dated March 29, 2017, in which the reason for Volson's termination was restated to say that her termination was based upon her failure to follow supervisor instructions. (Id. at p. 2). Plaintiff filed a formal EEO discrimination complaint on April 25, 2017, alleging disability discrimination. (Doc. 1 at ¶ 14). After a hearing before an Administrative Law Judge ("ALJ"), a decision was issued in favor of the Veterans' Administration ("VA") on September 13, 2018. (Id. at ¶ 17). Plaintiff filed suit in this court on December 19, 2018, alleging disability discrimination by the VA. (Id., generally).

Defendant filed its answer, denying all allegations of discrimination in this matter and asserting various affirmative defenses. (Doc. 6). Subsequently, VAMC filed the instant motion for summary judgment, seeking dismissal of all claims. (Doc. 17). The motion is now fully briefed and ripe for consideration.

*Applicable Standard*

Summary judgment is appropriate when the evidence shows "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is considered "material" in the context of the court's analysis when its existence or nonexistence affects the outcome of one or more claims under applicable law in the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute over a material fact is "genuine" when the evidence would permit a reasonable fact finder to render a verdict in favor of the nonmoving party. Id.

The moving party bears its burden by supporting its motion with specific portions of pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any which it believes demonstrate the absence of any genuine issue of material fact in the case. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Anderson, 477 U.S. at 247). A defendant will meet this burden when it shows a lack of evidence to support plaintiff's claim on an issue as to which plaintiff will bear the burden of proof at trial and plaintiff is unable, in response, to produce summary judgment evidence sufficient to sustain a finding in plaintiff's favor on the issue. James v. State Farm Mut. Auto Ins. Co., 743 F.3d 65, 68 (5th Cir. 2014) (quoting Kovacic v. Villarreal, 628 F.3d 209, 212 (5th Cir. 2010)).

Examining the admissible evidence before it, the court must accept the evidence of the non-movant as credible and draw all reasonable inferences in its favor. Anderson, 477, U.S. at 255. When the parties have both submitted contradictory evidence of one or more facts, a factual

4

controversy exists. The court will resolve all factual controversies in favor of the nonmoving party. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Plaintiff may not create a factual controversy by referring to the unsubstantiated allegations of the pleadings, but, rather, must "designate specific facts in the record showing that there is a genuine issue for trial." Wallace v. Texas Tech Univ., 80 F.3d 1042, 1047 (5th Cir. 1996). Similarly, Plaintiff may not satisfy his burden by demonstrating some "metaphysical doubt" as to the material facts via conclusory allegations or unsubstantiated assertions or by a mere scintilla of evidence. Little, 37 F.3d at 1075 (quoting Matsushita Electric Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); Hopper v. Frank, 16 F.3d 92 (5th Cir. 1994) and Davis v. Chevron U.S.A., Inc., 14 F.3d 1082 (5th Cir. 1994)).

II. ANALYSIS

*Plaintiff's Disability Discrimination Claim*

Plaintiff's suit advances two claims: the first for workplace discrimination based on her disability and the second for retaliation based on her EEO complaint. We begin with analysis of Plaintiff's disability discrimination claim.

Plaintiff's complaint cites Title VII of the Civil Rights Act of 1964 and the U.S. Constitution as bases of her claims in this suit. (Doc. 1 at ¶ 1). As argued by Defendant's motion, Plaintiff's claims are actually governed by the Rehabilitation Act, 29 U.S.C. § 790, *et seq.* Lopez v. Kempthorne, 684 F.Supp. 2d 827 (S.D. Tex. 2010) citing Dark v. Potter, 293 Fed. Appx. 254, 258 (5th Cir. 2008) (internal citations omitted). The Rehabilitation Act provides the exclusive remedy for federal employees alleging disability discrimination in the workplace. Id.

We note that the Rehabilitation Act provides for rights of action under either Section 501 or Section 504. Pinkerton v. Spellings, 529 F.3d 513, 515 (5th Cir. 2008) citing Prewitt v. U.S.

Postal Service, 662 F.2d 292 (5th Cir. 1981). Defendant's motion assumes that Plaintiff's claim is brought under Section 504, provides, in part, as follows:

> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service. 29 U.S.C. § 794(a).

Plaintiff's opposition to the motion does not dispute the VA's characterization of her claims. (Doc. 20). We also note that Plaintiff did not seek amendment of the complaint in this matter to specify a claim under Section 501 in response to the instant motion.

In Taylor v. City of Shreveport, 798 F.3d 276 (5th Cir. 2015), the Fifth Circuit Court of Appeals instructed that, to state a claim under Section 504 of the Rehabilitation Act, plaintiffs must "allege that the specific program or activity with which he or she was involved directly benefits from federal financial assistance." Id. at 283 citing Lightbourne v. City of El Paso, Tex., 118 F.3d 421, 427 (citing Brown v. Sibley, 650 F.2d 760, 767-71 (5th Cir. Unit A 1981)). Neither Volson's complaint, nor her memorandum in opposition allege facts supporting a claim under Section 504, according to the appellate court's reasoning in Taylor. We further note the general maxim that, when confronted with a motion for summary judgment pointing out issues which would prevent entry of verdict in favor of the nonmoving party, it becomes the duty of the nonmoving party to respond with specific facts and evidence to cure deficiencies where possible. The nonmoving party may not rest on its pleadings under the guise of curing such deficiencies at trial. Celotex, 477 U.S. at 321; Anderson, 477 U.S. at 247.

Laying aside our concerns regarding the deficiency of Plaintiff's allegations, we note that claims under Section 504 do not permit the recovery of monetary damages. Unlike Section 501 claims, the United States did not waive its sovereign immunity as to these claims. Thus, a

successful 504 claim merits injunctive relief such as reinstatement to employment, but not compensatory damage awards such as may be available under Section 501 claims. Lane v. Pena, 518 U.S. 187 (1996).

Were we to assume that Plaintiff successfully stated a claim for relief under Section 504, we would begin our analysis with consideration of Plaintiff's purported *prima facie* case for disability discrimination. In order to establish a *prima facie* case of employment discrimination based on disability under the Rehabilitation Act, Plaintiff must show: (1) that she is disabled; (2) that she is otherwise qualified to do her work; (3) that she is being excluded from her job solely because of her disability and, (4) that the federal job at which she was working receives federal funding. Hale v. King, 642 F.3d 492, 499 (5th Cir. 2011); Washburn v. Harvey, 504 F.3d 5050, 508 (5th Cir. 2007).

The ADA's definition of disability applies here, providing that a person is "disabled" when she has "…a physical or mental impairment that substantially limits one or more major life activities…a record of such impairment…or [is] regarded as having such an impairment." 42 U.S.C. § 12102(1). Major life activities include, but are not limited to, "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). Defendant's motion asserts that Plaintiff is unable to meet this first criterion of demonstrating her status as a disabled person or that she was regarded as disabled and, on that basis, seeks dismissal of her presumptive Section 504 claim. Viewing the evidence before us in the light most favorable to Plaintiff as the nonmoving party, we disagree. While we do not base our finding on Plaintiff's VA disability rating, noting that such rating is not relevant to our analysis under Burns v. Neilsen, 2020 WL 429429 (W.D. Tex. 2020) and Mosley v. Potter, 2009 WL

3672830 (S.D. Tex. 2009), we do find that other record evidence does tend to show that Plaintiff was regarded by her employer as disabled. Specifically, Government Exhibit 3 (Doc. 17-2 at pp. 3-4) is a form entitled "Accommodation Request Determination" that contains language clearly contemplating the grant or denial of workplace accommodation under the Rehabilitation Act. Plaintiff's requested accommodations of use of a small heater, an amplifier, and additional breaks during bouts of migraine headaches were granted, indicating that her supervisor, Sandra Noel was aware of her disability and the need for reasonable accommodation. Had she not been considered so disabled, her supervisor was entitled to select the option in Box 11 explaining the reason why her requested accommodation was denied or an alternative accommodation was proposed, which states, "you do not have a disability covered by the Rehabilitation Act."

Neither party disputes Plaintiff's qualifications to perform the work for which she was hired. Therefore, we must consider whether Plaintiff demonstrates that she was excluded from her employment solely because she was regarded as disabled. We find that Plaintiff fails to offer proof of this element of her claim.

Addressing the explicit causation requirement of Section 504 in Soledad v. United States Department of Treasury, 304 F.3d 500 (5th Cir. 2002), the Fifth Circuit determined that, unlike Section 501, this provision of the Rehabilitation Act did not incorporate the ADA's causation standard. Instead, the express language of Section 504 requires that a plaintiff prove that alleged discrimination is based "solely" on his or her disability, else no right of action arises under the provision. Flynn v. Distinctive Home Care, Inc., 812 F.3d 422, 428 (5th Cir. 2016).

The VA presents evidence that Volson was hired as a Hybrid Title 38 employee. (Doc. 28). Pursuant to 5 C.F.R. § 315, Volson was subject to a one-year probationary period. (Doc. 28-1 at pp. 8-10 citing VA Handbook 5021/6, Part III, Ch. 2). As a probationary employee, Volson

could be terminated during her one-year trial period because "...her work performance or conduct fails to demonstrate the fitness or qualifications for continued employment." VA Handbook 5021/6, Part III, Ch. 2(4)(a).

Evidence produced by the VA shows that Volson's performance as a Medical Support Specialist in the call center provided a reasonable basis for her termination. Emails between Noel and other VA employees reveal that Volson's call handling drew the attention of others outside Volson's call center. (Doc. 17-2 at pp. 11-12; Doc. 20-1 at p. 2). Noel issued Volson a written counseling regarding mishandled calls on March 9, 2017. (Doc. 17-1 at p. 10). Next, Noel issued two calendar invitations for the purpose of arranging in-person meetings with Volson. Volson ignored these calendar meeting requests. (Id.; Doc. 17-2 at pp. 41-42). Due to her failure to respond to her supervisor's requests for a meeting, Volson was given a written counseling in the presence of union representation. During the course of this exchange, Volson admitted, also in the presence of her union representation, that she did not read the email instructions previously provided to employees concerning Lake Charles call procedures. (Doc. 17-2 at p. 10). Volson was, thereafter, given additional training, during which she behaved in an unprofessional manner, yelling out to her coworkers in the calling center. (Doc. 17-2 at p. 35).

Following efforts at retraining Volson, a recommendation was made that Volson be terminated for "failure to follow supervisory instructions." Noel then informed human resources of the decision. Volson's employment was terminated, effective March 17, 2017. (Doc. 17-2 at pp. 35-37).

Conversely, Plaintiff alleges that on one occasion, Henry Jones ("Jones"), a call center coworker, remarked that "you must be pregnant...All you do is eat all the time." (Doc. 17-2 at p. 16). Volson alleges that she was coming back from picking up food along with another coworker

who was, at that time, pregnant. In response to the EEO investigation of this incident, Jones denied making the comment in the manner reported by Volson and, instead, claimed that he remarked that the pregnant coworker stated that she was "eating for two" when he exclaimed that they were carrying a great deal of food and asked whose food it was. (Id.). Aside from this isolated comment, Plaintiff makes only vague allegations that coworkers made "derogatory statements about her status as a disabled veteran[.]" Plaintiff also asserts that part of her hostile work environment was caused by her coworkers reporting her failure to properly handle Lake Charles calls to her supervisor. (Doc. 20 at p. 1).

The court has carefully reviewed not only the complaint in this matter, but all available evidence and finds that Plaintiff's allegations simply do not rise to the level of a hostile work environment as a matter of law. Jones' comment, viewed as urged by Volson as the nonmoving party in this case, is a single, stray comment and does not constitute a basis for a finding of the sort of actionable harassment alleged in this case. Murray v. Warren Pumps, LLC, 821 F.3d 77, 87 citing Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) ("[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment.").

Similarly, Plaintiff's vague allegations of "derogatory statements about her status as a disabled veteran" are not, as a response to a motion for summary judgment, precise enough factual allegations to stave off summary judgment. As cited above, a plaintiff whose claims are challenged by motion for summary judgment must respond by pointing to specific facts which, if proven at trial, would entitle her to judgment. Willis v. Roche Biomedical Labs, Inc., 61 F.3d 313, 315 (5th Cir. 1995). Moreover, it is incumbent upon the party opposing summary judgment to craft these arguments, drawing the evidence out of the record for the court's review and explaining how the

evidence supports the existence of triable fact issues. Ragas v. Tennessee Gas Pipeline Co., 136 F.3d 455 (5th Cir. 1998).

Plaintiff's final allegation is, essentially, that she was offended by her coworkers reporting her errors in call handling to her supervisors. Plaintiff does not allege that the errors reported by her coworkers were fictitious or that her coworkers treated her differently than others who were not disabled. Thus, we find that plaintiff's allegation fails to state a claim for discrimination, even if were supported with evidence, as a matter of law.

Out of an abundance of caution, however, we note that if any of the foregoing allegations were sufficiently stated and supported by specific factual allegations and evidence, Plaintiff's Rehabilitation Act claim would still fail at this stage because the evidence before the court demonstrates that Plaintiff's own performance was at least a viable portion of the basis of her termination. Recalling Section 504's requirement that Plaintiff's disability be the sole cause of the alleged discrimination, Plaintiff's Section 504 claim fails as a matter of law. Bennett-Nelson v. Louisiana Bd. of Regents, 431 F.3d 448, 454 (5th Cir. 2005) (internal citations omitted).

A claim of disability discrimination under Section 501 of the Rehabilitation Act is subject to the same analysis employed by the court to claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq*. Kemp v. Holder, 610 F.3d 231 (5th Cir. 2010) citing Delano-Pyle v. Victoria County, Tex., 302 F.3d 567, 574 (5th Cir. 2002). The VA's motion does not address Plaintiff's claims in the context of Section 501 and, for that reason, we do not reach any such purported claim.

*Plaintiff's Retaliation Claim*

Retaliation claims under the Rehabilitation Act are evaluated according to the familiar McDonnell Douglas burden shifting framework. Ryburn v. Potter, 155 Fed. Appx. 102 (5th Cir. 2005) citing McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). To establish a prima facie

case of retaliation under the Rehabilitation Act, a plaintiff must show that: (1) she engaged in a protected activity; (2) her employer took an adverse employment action against her; and (3) a causal connection exists between the adverse employment action and the protected activity. If the plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. McCoy v. City of Shreveport, 492 F.3d 551, 556 (5th Cir. 2007); Calderon v. Potter, 113 Fed. Appx. 586, 592 (5th Cir. 2004). If the employer articulates such a reason, the burden again shifts the plaintiff to prove that the employer's stated reason for its action is merely pretext for impermissible discrimination. McCoy, 492 F.3d at 557.

Neither party disputes that Volson's meeting with an EEO officer on March 7, 2017 in order to discuss her concerns was a protected activity or that Volson's termination on March 17, 2017 was an adverse employment action. Rather, the dispute lies in whether or not there is a causal connection between Volson's meeting with the EEO officer and her subsequent termination. "[T]he mere fact that some adverse action is taken *after* an employee engages in some protected activity will not *always* be enough for a prima facie case." Raggs v. Miss. Power & Light Co., 278 F.3d 463, 471 (5th Cir. 2002) (quoting Swanson v. Gen. Servs. Admin., 110 F.3d 1180, 1188 n.3 (5th Cir. 1997)). Plaintiff bases the entirety of her retaliation claim on the temporal proximity between her first conference with the EEO officer and her termination. Plaintiff does not, however, specifically allege facts tending to show that any VA employee responsible for the decision to terminate her employment was aware that she visited the EEO officer. This is particularly true since Plaintiff elected not to file a complaint at this March 7th visit, waiting until after her termination to file her complaint. Accordingly, the court finds that Plaintiff fails to demonstrate a prima facie case of retaliation based on her failure to show a causal connection between her conference with the EEO officer and her subsequent termination.

We note here, though we need not delve further into this issue, that if Plaintiff were able to demonstrate a *prima facie* case, we would find that the evidence before us shows the existence of a legitimate, non-discriminatory basis for Plaintiff's termination. As observed above, the record shows several instances of Plaintiff's insubordination and poor performance. As a probationary employee, these instances suffice as reasonable grounds for her dismissal. 5 C.F.R. §315. Moreover, Plaintiff does not show, by argument or evidence, that these grounds are pretextual. While she disputes that she dropped calls, the evidence more than supports a finding that Plaintiff's performance did not meet the expectation of her supervisor, Noel. (Doc. 20 at p. 6). Given these findings, as more fully discussed in conjunction with our analysis of Plaintiff's prior claim, the court concludes that summary judgment is also appropriate as to Plaintiff's retaliation claim. Defendant's motion will be so granted.

CONCLUSION

Plaintiff's Rehabilitation Act claims for both disability discrimination and retaliatory discharge will be DENIED and DISMISSED with prejudice based on the court's finding that Plaintiff fails to show requisite elements of prima facie proof of these claims. Specifically, the court finds that Plaintiff is unable to show that her termination was based solely on her disability or that there was a causal connection between her consultation with the VA's EEO officer and her subsequent termination. Plaintiff's allegations are largely vague and conclusory and, but for a single instance of a stray comment that was made in a context of contested meaning by Plaintiff's coworker, void of specific factual allegations of harassment. For these reasons as further discussed above, the motion for summary judgment filed by Defendant will be GRANTED in full.

ALEXANDRIA, LOUISIANA
AUGUST 17, 2020

DEE D. DRELL, JUDGE
UNITED STATES DISTRICT COURT

13